**FILED**

PAID

20164-b

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**JUL 1 1 2006**

**U.S. DISTRICT COURT
BAY CITY, MICHIGAN**

LAURIE McCANN,

    Plaintiff,

v

MIDLAND COUNTY EDUCATIONAL
SERVICES AGENCY, CLARK VOLZ,
VICKI DUSO and JEFFREY CLARK,

    Defendants.

_____/

**06 - 13150**

Case No.  06 _____

**Judge David M. Lawson**

**MAGISTRATE JUDGE
CHARLES E. BINDER**

MICHAEL J. FORSTER (P25048)
Attorney for Plaintiff
602 Hancock
Saginaw, Michigan 48602
Phone: (989) 790 5917

_____

### COMPLAINT AND JURY DEMAND

    Plaintiff, by counsel, complains against the Defendants as
follows:

### JURISDICTION

### (1)

    This is an action to enforce 42 USC 1983 (Deprivation Of
Civil Rights), vindicating Plaintiff's rights under the First and
Fourteenth Amendments to the United States Constitution.
Plaintiff also brings pendant claims under MCL 15.361 et. seq.
(Whistle-Blowers' Protection Act), and the Michigan Common Law.
The events giving rise to this action occurred within the Eastern
District of Michigan.  This Court has jurisdiction pursuant to 28
USC 1331 and 1343; and pendent jurisdiction over the state claims

arising from the same core of operative facts.

## THE PARTIES

### (2)

Plaintiff is, and was at all times referred to herein, a resident of the County of Midland, State of Michigan, and served as Accounting Supervisor for the Midland County Educational Services Agency. Plaintiff held said position from at least January 4, 1989 to April 18, 2006.

### (3)

Defendant Midland County Education Services Agency (hereinafter sometimes referred to as "Agency") is an intermediate school district and a body corporate governed by an intermediate school board organized and operated under the Michigan Revised School Code. MCL 380.601(a); MCL 380.604.

### (4)

Defendant Clark Volz is, and was at all times referred to herein, the Superintendent of the Midland County Educational Services Agency pursuant to a written contract between the Agency and said Defendant dated April 22, 2004.

### (5)

Defendant Vicki Duso is, and was at all times referred to herein, the Director of Finance for the Agency and Plaintiff's immediate supervisor.

(6)

Jeffrey Clark is, and was at all times referred to herein, the Director of Human Resources for said Agency.

## BACKGROUND FACTS

(7)

Attached hereto as Exhibit 1 is a copy of the Administrative Contract Of Employment entered into between Plaintiff and the Agency for the 2005-2006 fiscal year, i.e. July 1, 2005 through June 30, 2006.

(8)

As an employee of the Agency, Plaintiff had a property interest in her employment and was entitled to the protection of the policies adopted by the Agency's Board of Education.

(9)

The Agency required of Plaintiff as Accounting Supervisor that she, inter alia:

- (a) Maintain required accounting records and reports for all state, federal and local programs;

- (b) Assist with grant administration and budget preparation;

- (c) Supervis all areas of the accounting function;

- (d) Oversee those employees assigned to the Business Office;

- (e) Manage the accounting functions for general and federal grants;

- (f) Prepare documentation for financial audits;

(g) Assist with the budgeting and program auditing functions;

(h) Assume responsibility for the technical management of the financial system software and employee training of the financial system software.

(i) Comply with all federal and state regulations pertaining to the use of federal and state funds provided to the Agency;

(j) Inform her supervisor and/or the Agency's Superintendent and/or the Agency's Personnel Committee and/or Board of Education of inaccuracies in the Agency's financial statements and/or reports involving potential violations of federal and/or state regulations or guidelines;

(k) Make recommendations with respect to the suitability of applicants for employment for accounting-related positions within the Agency's financial Services Department.

(10)

Commencing no later than November 1, 2003 and continuing through the Agency's 2005-2006 fiscal year, the Agency maintained an open door policy which provided:

> "The Board recognizes the need to provide for the orderly resolution of disagreements or complaints arising out of alleged misapplication of District policies. Such disagreements or complaints should be resolved at the lowest possible administrative level. The following policies and administrative procedures at the end of this section have been developed with this in mind.
>
> It is the Superintendent's responsibility to insure that problem/complaint resolution procedures are used without fear or reprisal or retaliation."

(11)

Commencing no later than November 1, 2003 and continuing through the Agency's 2005-2006 fiscal year, the Agency's

aforesaid open door policy applied to "Whistle-Blowing"
complaints. Further, where whistle-blowing problems or
complaints arose, it was the Agency's policy that the Director Of
Human Resources conduct a timely investigation and protect the
complaining individual from any coercion, intimidation or
retaliation.

(12)

No later than November 1, 2003 and continuing through the
Agency's 2005 2006 fiscal year, the Agency maintained other
policies which provided:

  (a) That all employees were responsible for making
      themselves familiar with, and abiding by, all
      federal and state laws affecting their work
      (policy #5240);

  (b) When considering the dismissal of an employee,
      the Agency would insure that the employee's
      rights would not be violated and that the pro-
      cess be handled in accordance with all laws
      affecting the employee (policy #5160);

  (c) When taking corrective action against an employee,
      the Agency would impose an appropriate level of
      discipline based upon the severity of the miscon-
      duct and an employee's overall work record, con-
      sistent with the Agency's custom and practice of
      applying progressive discipline.

(13)

Plaintiff, by reason of the policies and past practices of
the Agency, had the expectation that her employment agreement
with the Agency would be renewed annually unless there was good
cause to terminate Plaintiff's employment.

(14)

As of January 1, 2005, the Agency had within its employ a woman (pseudonym: Jane Doe) who, pursuant to the governing labor contract, i.e., the Agreement between Midland County Educational Service Agency and the Midland Intermediate Federation Of Teachers (signed by the Agency and said union on or about October 10, 2003) enjoyed certain employment benefits, including health insurance coverage for her spouse (pseudonym John Doe).

(15)

Circa January, 2005, the Agency first employed John Doe. Because of the anticipated duration of John Doe's employment, John Doe also became subject to the terms of said governing labor contract.

(16)

The Agency compensated Jane Doe and John Doe, at least in part, by using funds provided by the federal government.

(17)

Upon information and belief, federal assistance was provided to the Agency through the United States Department Of Education and/or United States Department Of Treasury to compensate Agency employees such as Jane Doe and John Doe. Upon information and belief, the Agency also received funding assistance from the State of Michigan for the same purpose.

(18)

At the direction of Defendant Clark, the aforesaid John Doe was allowed to receive cash in lieu of health insurance coverage

as part of his compensation.

(19)

Plaintiff understood that the payment of cash in lieu of insurance coverage to the aforesaid John Doe constituted an improper expenditure of federal funds.

(20)

Circa February, 2005, Plaintiff informed Defendant Clark, who had authorized the cash compensation in lieu of insurance coverage to John Doe, that his authorization of that payment resulted in an inappropriate excess monthly expense from federal grant monies in the approximate amount of $513.00.

(21)

On or before February 1, 2005, Plaintiff, pursuant to the Agency's policies and practices, informed Defendant Duso of Plaintiff's belief that the aforesaid cash in lieu of insurance coverage payment was an improper expenditure of government funds.

(22)

On April 27, 2005, Plaintiff received her job performance evaluation, attached hereto as Exhibit 2.

(23)

On July 1, 2005, Plaintiff's employment agreement (Exh. 1) was renewed for one year as it had been renewed each year of her employment with the Agency.

(24)

Before the completion of the Agency's annual financial report for the 2004-2005 fiscal year, Plaintiff continued to seek

a determination from Defendant Duso as to the propriety of the
compensation of cash to John Doe in lieu of health insurance
coverage.  Defendant Duso informed Plaintiff that she was looking
into the matter and that she did not want to make changes or
corrections to the financial reports for the 2004-2005 fiscal
year.

(25)

Because the 2004-2005 fiscal year financial reports
reflected the use of federal funds to provide cash compensation
in lieu of insurance benefits as hereinbefore described,
Plaintiff contacted an auditor employed by the Michigan
Department Of Education in order to disclose the possible
violation of federal and/or state regulation or to receive
assurance that the aforesaid funds could be used in the manner
originally authorized by Defendant Clark.  She did not
receive assurance that the funds had been properly expended and
so informed Defendant Duso.

(26)

Each Defendant knew that Plaintiff had contacted the
Michigan Department Of Education's auditor and had not received
assurance that the use of educational funds was appropriate.

(27)

Circa August, 2005, Plaintiff was asked to sign the Agency's
financial report(s) pertaining to the 2004 2005 fiscal year.  By
that time Plaintiff had only been advised by Defendant Duso that
the propriety of paying cash in lieu of insurance coverage was

being researched. She therefore declined to sign the financial
report(s) and so informed the Agency's management.

(28)

On or about September 16, 2006, Plaintiff was summoned to
the office of Defendant Volz for the purported purpose of
discussing her concerns about filling an accounting-related
position with a candidate nominated by Defendant Volz. Prior to
said meeting, Defendant Volz had ordered the preparation of the
Waiver Of Employment And Release attached hereto as Exhibit 3.
The meeting was conducted in the presence of Defendants Duso and
Clark.

(29)

It was the purpose of each and every Defendant in presenting
the said Release (Exh. 3) to Plaintiff:

    (a) to retaliate against Plaintiff for her disclo-
        sure to the state auditor of the possible vio-
        lation of federal and state regulations per-
        taining to the use of government funds; and

    (b) to intimidate Plaintiff into giving up her pro-
        perty interest in her employment and other civil
        rights.

(30)

At the time that the aforesaid Release was presented to
Plaintiff, Defendants Volz, Duso and Clark indicated, inter alia,
that if Plaintiff signed the Release, she would receive a
favorable letter of recommendation, and that if she did not, she
would not receive such a letter. Plaintiff was further
instructed that she had until the following Wednesday to make her

decision and in the meantime was to return her keys and not to
return to her place of employment.

(31)

Plaintiff refused to sign the Waiver Of Employment And
Release and was immediately suspended.

(32)

Via letter dated September 26, 2005, Defendant Volz informed
Plaintiff that he would recommend to the Agency's Board of
Education that Plaintiff's employment be terminated.

(33)

The reasons offered by Defendant Volz for the termination of
Plaintiff were false or exaggerated and were the pretext for the
Defendants' retaliation for Plaintiff having reported a potential
violation of the use of federal and/or state educational funds to
the Michigan Department of Education and for having refused to
give up her property interest in her employment.

(34)

By reason of the terms of her contract with the Agency, her
status as a public employee and her rights under the First
Amendment to the United States Constitution, Plaintiff was
entitled not to be suspended and to retain her position as
Accounting Supervisor.

(35)

On or about September 29, 2005, Plaintiff, through her
counsel, protested the adverse employment actions hereinbefore
described to the Agency's Board of Education.

(36)

While the Agency's Board of Education permitted a hearing regarding Plaintiff's termination from employment, it failed to recognize Plaintiff's property interest in her employment and to provide the constitutional rights to which Plaintiff was entitled.

(37)

Though the Agency's Board Of Education indicated that it would authorize an independent review of the Agency's financial system (with the inference that that review would involve an investigation of the propriety of the use of cash compensation in lieu of insurance benefits to John Doe), the Agency's Board Of Education retained the same auditor involved in the audit of the Agency's 2004-2005 fiscal year financial report and requested from that auditor an opinion on the propriety of the use of educational funds based upon an arbitrary interpretation of the Agency's aforesaid labor contract.

(38)

The tasks assigned to the aforesaid auditor and the identity of the auditor were not disclosed to Plaintiff until after the auditor had prepared a written report. When Plaintiff subsequently requested to continue the hearing upon the recommendation of her termination, the request was not granted.

(39)

Subsequently, Plaintiff received the Superintendent's recommendation that her annual contract not be renewed.

(40)

It had been the custom and practice that the Agency's employees with satisfactory job performances have their annual contracts renewed.

(41)

Without supplying a written report regarding the reasoning behind its recommendation, the Personnel Committee of the Agency recommended that Plaintiff's contract not be renewed and that Plaintiff be terminated.

(42)

By letter dated April 7, 2006, the Agency's Board Of Education President informed Plaintiff that, pursuant to Plaintiff's request, the Board Of Education would have a meeting regarding her opposition to the Superintendent's recommendation of non-renewal of her contract of employment; however, Plaintiff was informed that the meeting would be limited to 30 minutes and "to you [Plaintiff], the Board and any individuals the Board request the information from."  Taking into account the context of prior correspondence between the Agency's representatives and Plaintiff's attorney, the April 7, 2006 letter communicated that Plaintiff would be deprived of legal representation insofar as Plaintiff's counsel would not be allowed to speak at the meeting nor allowed to question any person.

(43)

On April 18, 2006, the Agency's Board of Education terminated Plaintiff's employment with the Agency.

(44)

As a direct and proximate result of each Defendant's unlawful employment practices and tortious acts, Plaintiff has lost and/or will lose substantial income,    including, but not limited to, wages and fringe benefits, and the indignity of retaliation, humiliation, injury to her feelings, loss of professional standing and status in the community, irreparable harm to her reputation and invasion of her rights, including her property interest in the retention of public employment and to be free from retaliation in the exercise of her free speech and public duties.

(45)

As a further direct and proximate result of each Defendant's unlawful employment practices and tortious acts, Plaintiff has suffered mental anguish, outrage, anxiety about her future, harm to her employability and earning capacity, embarrassment among friends and former co-workers, disruption of her personal life and loss of the enjoyment of the ordinary pleasures of everyday life.

(46)

As a further direct and proximate result of each Defendant's unlawful conduct, Plaintiff has incurred costs and attorney fees.

COUNT I: - 42 USC 1983

(47)

Plaintiff adopts by reference all preceding paragraphs.

(48)

Each action of a Defendant as hereinbefore described was undertaken by each Defendant under color of law.

(49)

Defendants Volz, Duso and Clark conspired to deprive Plaintiff of rights guaranteed to her by the First Amendment (Freedom Of Speech) and the substantive due process clause of the Fourteenth Amendment, by interfering with her public employment because of her reporting of a potential misuse of the expenditure of federal financial assistance by the Agency.

(50)

The Defendant Agency engaged in conduct which deprived Plaintiff of rights guaranteed to her by the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment, by, inter alia:

(a) Disregarding Plaintiff's opposition to the Agency's hearing "ground rules" as being violative of procedural due process and the employee's contract;

(b) Prohibiting examination of the Agency's administrators by Plaintiff or her counsel;

(c) Failing to record within the minutes of the October, 2005 Board meeting the numerous reasons offered by Plaintiff as to why her proposed termination would be contrary to the Agency's policies and her rights;

(d) Failing to secure an independent review of the propriety of providing cash compensation in lieu of insurance coverage to John Doe;

(e) Terminating Plaintiff's employment.

(51)

The adverse employment actions taken against Plaintiff as hereinbefore described were undertaken knowingly and intentionally by each Defendant because Plaintiff had reported a potential misuse of federal financial assistance by the Agency and/or in order to coerce Plaintiff into giving up her property interest in her employment.

(52)

The conduct of each Defendant caused Plaintiff's damages as hereinbefore described.

## COUNT II - WHISTLE-BLOWERS' PROTECTION ACT

(53)

Plaintiff adopts by reference all preceding paragraphs.

(54)

Each Defendant is an employer as defined under the Whistle Blowers' Protection Act and Plaintiff is his/her/its employee, pursuant to MCLA 15.361(b) and MCL 15.361(a).

(55)

The State of Michigan, its Departments, including the Michigan Department of Education, and its regulatory agencies are each a public body under the Whistle Blowers' Protection Act.

(56)

Pursuant to the Whistle-Blowers' Protection Act, each Defendant had a duty not to discharge or threaten Plaintiff

regarding her compensation, terms, conditions or privileges of employment because Plaintiff reported or was about to report a suspected violation of a law or regulation or rule promulgated pursuant to the law of this state, a political sub division of this state, or the United States to a public body.

(57)

Each Defendant breached his duty in the manner as hereinbefore described.

(58)

Each Defendant breached the aforesaid duty so as to cause Plaintiff's damages as hereinbefore described.

COUNT III - BREACH OF CONTRACT

(59)

Plaintiff adopts by reference all preceding paragraphs.

(60)

The Defendant Agency breached its obligations to Plaintiff as set forth in the attached Administrator Contract Of Employment (Exhibit 1) by, inter alia:

(a) Terminating Plaintiff without just cause;

(b) Terminating Plaintiff without providing Plaintiff procedural due process;

(c) Terminating Plaintiff in violation of its policies, customs and past practices as hereinbefore described.

(61)

The Defendant Agency's conduct has caused Plaintiff the loss of wages and benefits and other damages as hereinbefore

described.

## RELIEF REQUESTED

Plaintiff respectfully requests this Honorable Court to order the following equitable and legal relief:

A. Order each Defendant to reimburse Plaintiff for all back pay and fringe benefits lost to date, with interest, so as to render her whole from the unlawful conduct;

B. Order the Defendant Agency to reinstate Plaintiff to an equivalent position, or to order each Defendant to reimburse her for future loss, pay and fringe benefits, in order to render her whole from all unlawful conduct;

C. Issue a permanent injunction prohibiting the Defendants from further acts of retaliation and constitutional violations;

D. Award Plaintiff costs of litigation, including reasonable attorney fees, pursuant to MCLA 15.363 and 42 USC 1988;

E. Enter judgment against each Defendant for compensatory and punitive damages to which Plaintiff is found to be entitled, together with costs, interest and attorney fees;

F. Any other relief that is appropriate and just.

Dated: ___6-22-06___

LAW OFFICES OF FRANK and FORSTER, P.C.

BY: ___MICHAEL F. FORSTER (P25048)___
Attorney for Plaintiff
602 Hancock
Saginaw, Michigan 48602
Phone: (989) 790 5917

<u>JURY DEMAND</u>

NOW COMES Plaintiff, by counsel, and hereby makes demand for a trial by jury in this cause of action.

Dated: _____6-29-06_____       LAW OFFICES OF FRANK and FORSTER, P.C.

                                    _____
                                    BY: MICHAEL J. FORSTER (P25048)
                                    Attorney for Plaintiff
                                    602 Hancock
                                    Saginaw, Michigan 48602
                                    Phone:  (989) 790 5917

# Midland County Educational Service Agency
# ADMINISTRATOR Contract of Employment

**This Agreement,** with an effective date of **July 1, 2005** is hereby entered unto between the Midland County Educational Service Agency, hereinafter called the Agency, and *Laurie McCann*, assigned as a *Accounting Supervisor* and hereinafter called the Administrator, for the **2005-2006 fiscal year.**

**WITNESSETH:**

1. **EMPLOYMENT AND DUTIES** - The Agency hereby employs the Administrator to perform such administrative duties connected with the Agency as may be assigned from time to time by the Agency. The Administrator represents that s/he is duly and legally qualified to perform the duties of the employment position herein designated. The Administrator agrees to perform the duties required of the Administrator by law and to obey and fulfill the rules and regulations as established by the Agency's Board of Education and to carry out its education programs and policies during the entire term of this Contract. The Administrator is subject to assignment and transfer at the discretion of the Agency's Superintendent or the Agency's Board of Education.

2. **CONTRACT VALIDITY** - This Contract shall not be valid unless the Administrator shall have such qualifications for the employment position herein designated and as required by law at the time the contractual period shall begin, and this Contract shall terminate if the Administrator shall at any time fail to possess any such qualifications.

3. **COMPENSATION** - The salary for the Contract period shall be as herein set forth. The Agency is authorized to make such payroll deductions as required by law or as authorized by the Administrator and such sums as have not been earned due to absence from employment.

4. **TENURE** - The Administrator shall not have tenure in any non-classroom capacity by virtue of this Contract.

5. **CONDITIONS OF EMPLOYMENT** - The Administrator will be afforded the same benefits granted to other Administrators and is subject to the terms and conditions of policies approved by the Agency's Board of Education. Any additional terms, whether appearing on the front or reverse side of this Contract, or attached hereto, shall constitute a part of this Contract.

6. **MORAL TURPITUDE** – The Administrator is prohibited from engaging in conduct involving moral turpitude. The Agency may void this Contract if the Administrator violates this provision. Moral turpitude may be defined as an intentional gross violation of standards of moral conduct and may include crimes against another person, crimes against property, crimes against society and/or crimes against the government.

7. **TERMINATION** - This Contract may be terminated by the Administrator with at least a 30-day written notice, unless an earlier date is mutually agreeable with the Agency's Board of Education. This Contract may be terminated by the Agency with a 60-day written notice when the Agency's Board of Education determines that a financial crisis exists for the Agency that requires a reduction in personnel. Additionally, this contract may be terminated with the appropriate due process for performance-related issues.

8. **CONTRACT PERIOD** - This Contract shall be effective for the period herein set forth. The Agency reserves the right to establish such employment regulations as it deems reasonable and to make such modifications in any subsequent Contract with the Administrator as may be permitted by law.

9. **CONTRACT AND FINANCIAL INFORMATION:**

| Calendar | Starting Date | Termination Date | Level and Step | Base Annual Salary |
|---|---|---|---|---|
| Fiscal | 7/01/05 | 6/30/06 | Level ADM, Step N/A | $60,273.00 |
| | | | | |
| | | | **TOTAL SALARY** | **$60,273.00** |

The parties have agreed to this Contract this _____ 1 _____ day of ___July___ 20 05

_____
Administrator's Signature

_____
Superintendent's Signature

**Name:**      *Laurie McCann*
**Address:**   *3 Dan Ct.*
              *Midland, MI  48642*

EXHIBIT #1

# EVALUATION "A"

**LAST NAME:  McCann**                         **FIRST NAME:  Laurie**

JOB CLASSIFICATION:    Accounting Supervisor

LENGTH OF SERVICE IN PRESENT POSITION:

**I RECOMMEND THAT THIS EMPLOYEE BE:**

| | | | |
|---|---|---|---|
| _____ | retained on tenure | _____ | placed on continuing contract |
| _____ | placed on tenure | _____ | denied tenure * |
| _____ | placed on 2nd-year probation | _____ | denied continuing contract* |
| _____ | placed on 3rd-year probation | _____ | dismissed * |
| __X__ | retained on continuing contract | _____ | other * |

*\* Explain in detail on separate page.*

This evaluation was discussed with the staff member on the following date:_____4/27/05_____

DATE OF COMPLETION OF APPRAISAL:        4/27/05        DATE DUE:

SUPERVISOR:  Vicki Duso                              APPRAISER:  Vicki Duso

"I hereby certify that I have reviewed this completed evaluation.  I understand that this signature indicates only that I have had the opportunity to review this appraisal, NOT that I necessarily agree with the rating."

EMPLOYEE'S SIGNATURE: *Laurie McCann*        DATE: 4/27/05

APPRAISER'S SIGNATURE: *Vicki L Duso*        DATE:

SUPERVISOR'S SIGNATURE:        DATE: 4/27/05
*Jeffrey A. Clark  4/28/05*

_____  *I wish to have a re-evaluation within _____ calendar days or a mutually agreed-upon date.*

_____  *I wish to have this evaluation reviewed by the Merit Review Committee.*

---

### INSTRUCTIONS

| | |
|---|---|
| [1] | The overall performance is outstanding and noteworthy [Superior] |
| [2] | The overall performance exceeds basic expectations [Excellent] |
| [3] | The overall performance meets basic expectations [Good] |
| [4] | The overall performance is below basic expectations.  This is a temporary rating allowable for a one-year period only [Temporarily Acceptable] |
| [5] | Unsatisfactory [Unacceptable] |

**LAST NAME:  McCann**                         **FIRST NAME:  Laurie**

EXHIBIT #2

**EVALUATION CRITERIA AND CHECKLIST:**

| Ability to get things done:  How well does the administrator carry out the duties of the job? | 1  1.8 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|

| Comments: |
|---|
| Laurie is excellent at carrying out many aspects of her job, as described below. |

| Utilization of resources:  How effective is the administrator in using the resources of staff, time, money, materials, equipment, space and special services available? | 1 | 2  2.0 | 3 | 4 | 5 |
|---|---|---|---|---|---|

| Comments:  With Laurie's help, the staff cross-trained another staff member in accounts payable processing.  This allowed us to provide service to Bullock Creek, and strengthened our internal capacity.  Together, we need to ensure the payroll accounts are coded correctly before the start of school, and do periodic monitoring. |
|---|

| Leadership:  How effective is the administrator in getting people to accomplish desirable objectives, utilize effective methods, and accept administrative directions? | 1  1.5 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|

| Comments:  Laurie works with her staff to help them understand the importance of following set processing procedures in order to eliminate errors in payroll processing.  She has bird-dogged several finance system malfunctions and brought them to the attention of Saginaw staff.  I believe her persistence will help everyone using the software, as fixes to the system will eliminate the potential for future errors. |
|---|

| Development of others:  How successful is the administrator in developing the potential of the staff members? | 1  1.5 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|

| Comments: Laurie encourages Lesia and Amee to attend e-ASG meetings and training to further their understanding of the financial system and report writer.   She was very supportive of training additional staff and provided the level of assistance necessary to make it happen. |
|---|

| Growth:  Does the administrator demonstrate the capacity and desire to broaden personal perspectives and become more valuable to the entire school system? | 1 | 2  2.0 | 3 | 4 | 5 |
|---|---|---|---|---|---|

Comments: Laurie enrolled in the MSBO Certification program and is taking classes as time and funding permits.  She was instrumental in submitting our first FID report to the State, and worked with the MDE to report our new proprietary fund correctly.   She willingly attends meetings on the organization's behalf.

| Knowledge and experience:  Is the administrator's depth and breadth of practical, technical and academic knowledge sufficient for effective handling of the problems of the job? | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | 1.5 | | | | |

Comments:  Laurie's understanding of accounting practices is excellent. She indicates in her self-evaluation that she wants to learn more about the report-writing features of the financial system.  She understands the workings of both sides of the finance system, and is often able to identify system problems quickly.

| Judgement and initiative:  Does the administrator apportion total effort according to the overall importance of each objective?  Are correct alternatives and sequences chosen in carrying out the job?  Does the administrator display the ability to adapt to changing situations, to analyze and make judgements?  Does the administrator act on personal initiative when appropriate? | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | 1.5 | | | | |

Comments: Laurie does an excellent job of keeping me informed of potential issues with employees or finance system problems.   She does everything she can to solve problems and prevent errors where she can.

| Ability to establish priorities: Does the administrator have the ability to establish a clear order of priorities and divide attention and time appropriately? | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | | 2.0 | | | |

Comments:  Laurie is good at juggling multiple tasks.  In her self evaluation she identifies that she would like to improve the ability to organize her time to provide 2 weeks lead time on deadlines for reports, etc.  I would also encourage her to make preparation for the audit a priority in early June, so that reports for the auditor are completed before they need them.

| Emotional Resources:  Does the administrator consistently withstand pressures and tensions inherent in the job without losing effective control?  Does the administrator remain calm and effective in dealing with crisis situations and assist the staff in maintaining positive attitudes under all conditions? | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | | 2.0 | | | |

Comments: One of her goals for this year was to implement an improvement plan for customer service based on feedback from an internal survey.  I have seen some additudinal improvements and willingness to take on additional work by her staff, as a result.

3

| School and Community Relations: Does the administrator know and understand the local community? Does the administrator understand the strengths and problems of the school community? Does the administrator remain in contact with the community, the schools, the classrooms? Do the administrator's actions show respect and support for the educational program? | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| | | 2.0 | | | |

Comments: Laurie regularly talks with other business managers, and is committed to providing backup to our locals, if the need should arise.

Supplemental Comments: Thank you for your continued efforts to ensure that MCESA has a well-designed and functional financial system. Continue to work toward making the business office known as a collaborative department that is well-respected and essential part of the school community. Seek to identify areas in which the business office could provide additional service to our local schools.

Suggestions for corrective action [unsatisfactory rating]:

None.

Suggested Goals for 2005-2006:

Evaluate your time and set priorities for preparation, so that you allow yourself lead time to have reports/projects completed by the deadlines.

Identify ways to increase the effectiveness of the business office and new opportunities to be of increased service to our local schools.

Become proficient with the new finance system report writer, and design reports that pull data needed for decision making and reporting. Work toward implementing the fixed asset and recurring entry features of the financial software.

Work collaboratively with IIR to improve the insurance billing and accounting process.

With Vicki, identify the organization's future financial software needs and requirements.

Continue to attend MSBO Certification classes.



**MIDLAND COUNTY**

*ESA*

CONFIDENTIAL

**EDUCATIONAL SERVICE AGENCY**

## WAIVER OF EMPLOYMENT AND RELEASE

This Waiver of Employment and Release ("Release") is executed by **Laurie McCann** ("Employee") in favor of **Midland County Educational Service Agency**, its board of education, directors, officers, employees, agents and assigns (hereinafter collectively referred to as "the District").

For and in consideration of the sum of **Fourteen Thousand** Dollars ($14,000.00), which represents payment of all remaining unused vacation leave and approximately four weeks of pay (subject to normal and required payroll deductions and payable within thirty (30) calendar days of the execution of this Release) and for and in consideration of District-paid COBRA premiums (single coverage medical and single coverage dental) through February 28, 2006, Employee voluntarily resigns her employment with the District effective **September 16, 2005**, and waives any and all claims for and agrees not to seek reinstatement or reemployment with the District in the future.

Furthermore, Employee releases and forever discharges the District from any and all claims, demands, obligations, agreements and/or losses, of every kind and description, in any forum, judicial or administrative, state or federal, whether founded upon contract (express or implied, individual or collectively bargained), tort, statute, ordinance or regulation (whether federal, state or local), common law or upon any other theory or basis, whether past, present, known or unknown. It is specifically understood and agreed that this Release is a full, complete and general release, including all claims whatsoever, and specifically including claims under the Age Discrimination in Employment Act of 1967, as amended, 29 USC § 621, *et seq.*, and the Older Workers' Benefit Protection Act, but excludes any claims arising in the future.

In signing this Release, Employee acknowledges that:

1. She has been advised to consult with an attorney before signing this Release.

2. She has been given at least twenty-one (21) days to consider the Release, although she may voluntarily execute the Release in less than 21 days.

3. She understands that this Release shall not become effective or enforceable until seven (7) days after execution of this Release. She also understands that she may revoke this Release during this seven (7) day period. To be effective, her revocation must be in writing and delivered to the District. She understands that seven (7) days after execution of this Release, this Release will become effective and enforceable without any further affirmative action by either party.

Employee agrees that she will immediately return all District property in her possession, including files, pass codes, memoranda, documents, records, disks, copies of the foregoing, credit cards, keys and equipment. Employee agrees not to attempt access or assist anyone else in attempting to access in any manner the District's computer, information or communications systems effective immediately.

EXHIBIT #3

3917 Jefferson Ave., Midland, MI 48640-3599
(989) 631-5890
Fax (989) 631-4361

For purposes of this Release, "confidential or proprietary information" means lists of students, employee information, financial statements and other financial information, cost and pricing information, personnel policies and any information about the business and practices of the District.

1.  Non-Disclosure. Employee agrees that she will treat any confidential or proprietary information as private and privileged, and will not divulge or disclose such information to any person, firm, corporation, association or other entity except upon the specific written authorization of the Superintendent of the District.

2.  Surrender of Records. Employee agrees to surrender to the District all documents, records, or other materials, and all copies thereof, containing confidential or proprietary information, regardless of when or by whom such materials were prepared, and regardless of when or how she obtained those materials.

The parties agree that any breach or threatened breach of this provision would cause irreparable harm to the District, that a remedy at law or in damages would be inadequate to remedy such a breach or threatened breach, and that the provisions of this paragraph may be enforced by way of a restraining order or injunction, in addition to any other remedies which may be available by law.

Employee agrees that the terms, provisions and conditions of this Release are private and confidential and that she, her agents, officers or attorneys shall not disclose or discuss the existence, nature or terms of this Release with any third party, except as required by law or in order to enforce the terms of the Release.

Employee further agrees that she will not, by any deed or act of communication, disparage, criticize or condemn or impugn the reputation or character of the District.

Employee acknowledges that this Release contains and comprises the entire understanding of the parties and that there are no additional promises, representations, terms or provisions other than those contained herein.

Employee acknowledges that she has fully reviewed the terms of this Release. Based on that review, Employee specifically acknowledges that she completely understands and accepts the terms of this Release and that she enters it freely and voluntarily on this _____ day of _____, 2005.

_____
Employee

WITNESSES:

_____

_____

2

JS-44 (12/84)

**CIVIL COVER SHEET**

**06-13150**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. **(SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)**

**I. (a) PLAINTIFFS**

LAURIE McCANN

**Judge David M. Lawson**

**DEFENDANTS**

MIDLAND COUNTY EDUCATIONAL SERVICES AGENCY, CLARK VOLZ, VICKI DUSO and JEFFREY CLARK

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Midland
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Midland
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(C)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

MICHAEL J. FORSTER (P25048)
602 Hancock
Saginaw, MI  48602
Phone:  (989)  790-5917

ATTORNEYS (IF KNOWN)

**MAGISTRATE JUDGE**
**CHARLES E. BINDER**

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 USC 1983

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R R & Truck ☐ 650 Airline Regs. | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/ etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 660 Occupational Safety/Health | ☐ 820 Copyrights ☐ 830 Patent | ☐ 460 Deportation ☐ 470 Racketeer Influenced and corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC (405(g)) | ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☒ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence 28 USC 2255 | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes ☐ 871 IRS Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☒ 442 Employment | | | | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Accommodations | ☐ 530 Habeas Corpus | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A **CLASS ACTION**  ☐ UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint:  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASES(S) IF ANY**    JUDGE _____ DOCKET NUMBER _____

DATE  6-29-06    SIGNATURE OF ATTORNEY OF RECORD

**UNITED STATES DISTRICT COURT**

(a) IS THIS A CASE THAT HAS BEEN PREVIOUSLY DISCONTINUED OR
DISMISSED WITHOUT PREJUDICE OR REMANDED TO A STATE COURT?        ____ YES $\times$ N

(b) IF **YES** GIVE THE FOLLOWING INFORMATION:        CASE NO: _____ ___.

  COURT _____        ASSIGNED JUDGE _____

# PURSUANT TO LOCAL COURT RULE 8 (b) (3) (ii)

(a) OTHER THAN STATED ABOVE, ARE THERE ANY PENDING OR PREVIOUSLY DIS-
CONTINUED OR DISMISSED COMPANION CASES (cases in which it appears sub-
stantially similar evidence will be offered at trial or the same or related parties are        ____ YES $\times$ NO
present and the cases arise out of the same transaction or occurrence) IN THIS OR ANY
OTHER COURT, INCLUDING STATE COURT?

(b) IF **YES** GIVE THE FOLLOWING INFORMATION:        CASE NO: _____

  COURT: _____        ASSIGNED JUDGE: _____